Opinion of the Court.
Kirkpatrick C. J.
The two questions raised upon this case by the counsel at the bar, and the only two, so far as my notes enable me to say, were
1. Whether this road, the return whereof is not found recorded in the county clerk’s office, be such public highway, as that *an overseer can lawfully enter upon it, and open and repair it, for the public use and accommodation ? And if so,
2. Whether this overseer, without having this particular part of the road assigned to him in writing by the township committee, was justifiable in thus entering upon it and working it ?
I shall take it that if these two questions can be answered in the affirmative, the judgment must be re *556 versed. Por I think it is fairly to be inferred, from the of the justice, that what the overseer did, wras nothing more than an opening up of the road to its proper width, and transposing of materials of repair from one part of it to another. And I take this with the greater confidence, because the two questions stated by the counsel for the defendant here, seem to me to rest upon that foundation, and because the justice, in his amended return, says “it appeared that the defendant threw down ten panels of fence, that belonged to the plaintiff and took away some stone and ground, that had been put across the old road,” theAZd road and new one, meaning, as it was explained by the plaintiff's counsel, and without contradiction by his adversary, the mere waggon tracks upon the same road, and not two distinct roads.
1. As to the first of these questions then ; I have looked into the old acts of assembly upon this subject so far as I have been able to collect them. The first that I can find was passed in 1682, soon after the first settlement of the province. It directs that all necessary highways, &c. ‘shall be set and laid out in and through every county within this province by certain persons therein named and appointed for their respective counties; and that they shall make account thereof and give and return the same to the governor and counsel that they may be entered and registered in the public records of the said province.
The next act which I have, was passed in 1716. It confirms all roads of six and four rods wide theretofore laid out by virtue of a certain act of assembly therein mentioned and thereby repealed.
The repealed act I cannot find, but what is there said of it, and also what is said in the preamble of an act respecting the road from Amboy to Burlington, passed in 1758, induces a belief that it only increased the powers of the former commissioners, and gave them more special directions as to the width of the roads by them to be laid out.
*This act of 1716, after confirming the roads before laid out, directs the choosing of overseers of the highways, *557 defines their powers, and prescribes their duties; and among other things it expressly directs that the public highways to be laid out by the said surveyors, shall be four rods wide. But it does not direct that they shall be recorded in the county clerk’s office, nor in any other office.
The next act was passed in 1760. It confirms all roads and highways of six and four rods wide which have theretofoie been laid by any acts of assembly whatsoever; and after directing the manner of choosing surveyors, and of obtaining a public road, and after directing that the roads so to be laid out shall be, two, three, or four rods wide, as the case may require, it especially directs that the said surveyors shall make return thereof to the clerk of the county, who shall record the same in a book to be kept for that purpose, to be called the road-book. And this is the first act that I can find which requires such return and such entry, .and, I believe, is the origin of the road-book.
The next act in order, and the last of which I shall take notice, is that of 3774. This act, like its predecessor, confirms all roads and highways of six and four rods wide theretofore laid out by any act or acts of assembly whatsoever; directs the choosing of surveyors, the mode of proceeding, the width of the roads, and the return and recording thereof in the road-book, and then repeals all former acts upon that subject.
If this be a correct view of these acts, it is obvious that we are not to look for the records of roads laid out and used before the year 1760, in the road-books of the respective counties, because until that time, no such books existed by any provision of the law.
It is probable too, and indeed I have been so informed by a gentleman who was very familiar with the public records of the province, of that day, that very few of the roads laid out by virtue of the act of 1682, and the succeeding acts till 1760, were to be found in those records; and that it was therefore, principally, that these confirming acts were made. And surely nothing could be more reasonable, for it would have been exceedingly inconvenient that the whole intercourse of the people should be *558 interrupted or suspended merely because the roads hap-not to be recorded, however long they might have been in public use.
If this be so, the road in question being an ancient road, and *used as such as far back as the memory of man can reach, it must be considered as a public four-rod road, laid out by virtue of some one of these former acts, before the recording in the county book was directed, and confirmed by those that succeeded it.
Upon the first question then, I think the case is with the plaintiff in certiorari. The road was a lawful public highway.
2. As to the second question, the words of the act are, “The township committee are hereby authorised and directed to assign and appoint, in writing, to the overseers respectively, their several limits and divisions of the highways within such township for working, amendment, and repair.
The great object of this clause is to inform the overseer, with precision, what part of the road belongs to him, and to make him responsible for the repairing of it. Whatever advantage, therefore, he might make of the want of formality in giving that information, third persons, who are in no way interested in it or affected by it, can make none. Besides, after a good deal of inquiry, I have found that the course pursued by these committees, in very many townships, has been, to lay off the township in districts, which are entered in their books, and which remain unaltered, sometimes, for many years together; and then at the town-meeting annually, to choose an overseer fcr each district, and to make no further assignment about it. And surely whatever an overseer might say, in such case, in order to avoid a heavy penalty, no other man could raise up any objection against it.
Upon the whole then, on both these points stated by the counsel, I think this judgment must be reversed.
Judgment reversed.